IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KINDER MORGAN RIVER TERMINALS, LLC                    PLAINTIFF

         v.          Civil No. 07-2120

PORT AUTHORITY OF THE CITY OF
FORT SMITH, et al.                                    DEFENDANTS

<u>**O R D E R**</u>

Now on this 7th day of December 2007, comes on for consideration plaintiff's **Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2)**. Defendants filed a **Response (Doc. 8)** in opposition to the motion, and a hearing was held on the matter on November 15, 2007. The Court, being well and sufficiently advised, concludes that a preliminary injunction should be **GRANTED** to preserve the status quo pending the trial of this action and entry of a final judgment on the merits. The Court finds and orders as follows with respect thereto:

**BACKGROUND**

1. This action centers around a river port owned by the City of Fort Smith and governed by the City of Fort Smith Port Authority (hereinafter the "Port Authority"). Since 1970, the Port Authority has leased the premises, first to the Fort Smith Port Terminal, and then to its successors in interest, the latest of which is the plaintiff, Kinder Morgan River Terminals, LLC

(hereinafter "Kinder Morgan"), who began operating the port in 2004.  The original lease was executed in 1970, and there have been nine addendums to the lease executed over the years.  (Pl.'s Ex. 2.)

2.   The current lease runs through 2031, but a dispute has arisen between Kinder Morgan and the Port Authority over the payment of royalties and the submission of reports by Kinder Morgan to verify the amount of royalties owed to the Port Authority.

3.   On September 24, 2007, the Port Authority voted to terminate the lease and evict Kinder Morgan as of November 1, 2007.  (Defs.' Ex. 44.)  On October 3, 2007, the Port Authority voted to hire a company known as Five Rivers to become the new port operator, subject to the negotiation of a contract.[1]  (Defs.' Ex. 45.)

4.   On October 18, 2007, Kinder Morgan instituted this action,[2] seeking, inter alia, a declaratory judgment that it has the "right to continue to occupy the Leased Premises, ... that the termination attempted to be made by the Port Authority's actions has no legal force and effect, and is in violation of the Lease

---

[1]Deputy City Administrator Dean Kruithof testified at the hearing in this matter that the Port Authority does not yet have a contract with Five Rivers.

[2]Kinder Morgan named the Port Authority as a defendant, as well as the City of Fort Smith and the members of the Port Authority in their official capacities.  For simplicity's sake, the Court refers to the defendants collectively as the Port Authority.

Agreement, [and] that Kinder Morgan does not have to allow Five Rivers or any competitor on the Leased Premises."[3]  (Doc. 1 ¶ 40.)

5.   In the motion now before the Court, Kinder Morgan seeks to enjoin the Port Authority, until such time as a final judgment on the merits of this case is rendered, from "directly or indirectly interfering with or preventing Kinder Morgan's occupation and operation of the Leased Premises" and from "bringing any competitor, including Five Rivers, on the Leased Premises." (Doc. 2 ¶ 1.)

While the Port Authority had originally voted to evict Kinder Morgan as of November 1, 2007, counsel for the Port Authority subsequently agreed to maintain the status quo until December 15, 2007, to allow the defendants time to respond to the motion for preliminary injunctive relief and to allow the Court additional time to hear and decide the matter.

**DISCUSSION**

6.   The factors to be considered in deciding whether to grant preliminary injunctive relief[4] under Rule 65 of the Federal Rules of Civil Procedure include:

---

[3]While the Port Authority voted at a board meeting to terminate the lease and evict Kinder Morgan, it does not appear that the Port Authority has formally served Kinder Morgan with a notice of eviction.  This action is nevertheless ripe for adjudication, because a "plaintiff need not have to 'await consummation of threatened injury' before bringing a declaratory judgment action ...; [i]nstead, an action is ripe for adjudication if the plaintiff faces injury that 'is certainly impending.'" South Dakota Mining Ass'n, Inc. V. Lawrence County, 155 F.3d 1005, 1008 (8ᵗʰ Cir. 1998) (internal citations omitted).

[4]As defendants have responded to the subject motion and a hearing with both parties present was conducted on the matter, the Court will treat the motion as one for preliminary injunctive relief rather than a motion for a temporary restraining order.

* the probability of success on the merits;

* the threat of irreparable harm to the movant absent the injunction;

* the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties; and

* the public interest.

See Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

7.  Probability of Success on the Merits - Kinder Morgan argues that it is likely to prevail on the merits because, inter alia:

(1)  The Port Authority did not provide Kinder Morgan with "notice of any default under the Lease Agreement in sufficient particularity for Kinder Morgan to exercise its right to cure any such default" (Doc. 3 at pg. 18); and

(2)  Any delinquent royalty payments have now been made and accepted by the Port Authority, and the Port Authority has, therefore, waived any default by Kinder Morgan.

The Court will address each of these arguments in turn.

## (1) Notice of Default

(a)  Article 21 of the original lease agreement provides:

In case Operator shall ...  fail to perform any material part of this agreement ... and such default shall continue for thirty (30) days after the Port Authority gives written notice of such default to the Operator,

-4-

> then and thenceforth, ... this lease may be forfeited
> and thereby become null and void at the option of the
> Port Authority, and said Port Authority may at any time
> thereafter re-enter the leased premises ... and
> repossess ... and expel said Operator.

(Pl.'s Ex. 2 at pg. 12.)

(b)  On April 6, 2006, counsel for the Port Authority hand-delivered a letter to Kinder-Morgan stating:

> Upon a review of the records provided by the terminal
> operator to the Port Authority..., our client believes
> that royalties owed under the Agreement have not been
> properly paid during the years 2000, 2001, 2002, 2003
> and 2005.  Additionally, during those periods of time,
> documents submitted to our client have not included
> certifications by independent auditing firms as to the
> accuracy of the information submitted.
>
> Our client reserves all rights and remedies under the
> Agreement.
>
> Our client respectfully requests that it be provided
> within ten (10) days of the date of this letter a
> summary of all amounts the terminal operator contends it
> has paid to the Port Authority with reference to the
> rentals due under the Agreement for the years 2000
> through 2005, together with the financial information
> needed to verify the accuracy of the payments and the
> accounting certification of the information as required
> by provisions of the Agreement.  If the information from
> our client's initial review is correct and sums owing
> have not been paid, our client requests payment of the
> owed sums, together with appropriate interest, at the
> time of submission of the summary.

(Defs.' Ex. 6.)

The Port Authority argues that this letter constituted written notice that Kinder Morgan was in default and that, under the lease agreement, Kinder Morgan had 30 days from the date of this notice in which to cure the default, which it did not do.

(c) While the Court was unable to locate any Arkansas precedent on the issue, other jurisdictions that have addressed the sufficiency of a notice of default have generally held that the notice must plainly indicate the nature of the default and give reasonable notice that failure to cure the default within the time allowed may lead to termination. See 49 Am. Jur. 2d Landlord and Tenant § 220; Bentley v. Potter, 694 P.2d 617, 620 (Utah 1984); Hocker v. Heins, 231 N.Y.S.2d 481, 483-84 (N.Y. Sup. Ct. 1962). In Moore v. Richfield Oil Corp., 377 P.2d 32, 35 (Or. 1962), in which a lease contained a termination provision similar to the one at issue in this case, the Court explained:

> A notice of default must convey the message that the notifier is initiating the steps necessary to finally assert his legal rights and that if the default is not cured he may take final action as provided in the contract... The notice to the lessee must give him warning that the lessor will assert his right of termination if the lessee does not cure the default within the [time allowed].

(d) Similarly, in Kirschenbaum v. M-T-S Franchise Corp., 355 N.Y.S.2d 256 (N.Y. Civ. Ct. 1974), the Court observed:

> In the construction of all contracts, under which forfeitures are claimed, it is the duty of the court to interpret them strictly in order to avoid such a result, for a forfeiture is not favored in law. Additionally, for similar reasons, a notice of termination of a lease must be clear, unambiguous and unequivocal if it is to function as the catalyst which terminates a leasehold.

Id. at 259 (internal quotations and citations omitted)

(e) In Hocker, 231 N.Y.S.2d at 483-84, the lessor's counsel informed the lessee by letter that they had 90 days to cure

-6-

certain alleged violations of the lease.  The Court held that the notice was insufficient, reasoning:

> [T]he notice did not advise the tenant that upon failure to cure the alleged defects, the lease would be terminated on a fixed date....  Following the oft expressed philosophy that forfeitures are not favored ..., the Court holds that in order to be effective the notice required under this lease must be unequivocal and advise the tenant clearly that on a stated date the lease would end unless the defaults complained of were cured.  Anything short of that is insufficient.

(f)  The Court agrees with the principles announced in the above cases from other jurisdictions.  In applying these principles to the April 6, 2006 letter which the Port Authority argues constituted the notice of default, the Court finds it significant that nothing in the letter can be construed as warning Kinder Morgan that the lease would be terminated if the alleged defaults were not cured within 30 days.  In fact, the letter did not even clearly state that Kinder Morgan was in default, but asked Kinder Morgan to provide proof, within ten days, of the payments at issue and accuracy thereof.  The letter further advised Kinder Morgan that "if" the Port Authority's "initial review" was correct and sums were owing, then the Port Authority requested payment of these sums within the same ten-day period (not the 30-day period provided for in the lease).

(g)  The Court notes that subsequent to Kinder Morgan's receipt of the April 6, 2006 letter, the parties exchanged correspondence over a several month period in an attempt to

ascertain the exact payments allegedly owed by Kinder Morgan. However, the Port Authority has not identified any document within this correspondence in which it specifically advised Kinder Morgan that it would terminate the lease if Kinder Morgan did not cure a specific default within 30 days.

(h)  Based on the foregoing, the Court concludes that Kinder Morgan has sufficiently established at this stage of the litigation that it is likely to succeed on the merits of its argument that the Port Authority has no right to terminate the lease because it did not provide Kinder Morgan with a valid notice of default.

### (2) Waiver of Default

(a)  Kinder Morgan also argues that it is likely to prevail on the merits because all delinquent royalty payments have now been paid.  Kinder Morgan asserts that by accepting these payments, the Port Authority has waived any default.  The Port Authority acknowledges that it accepted the payments, but points out that it did so with the express reservation that it was "depositing the checks without prejudice to the positions of the Port Authority regarding delays in payments due under the operating agreement...."  (Defs. Exs. 25, 28.)

(b)  The minutes of the Port Authority board meeting on April 17, 2007, reflect:

[Counsel] reported that royalties under the operating agreement had been identified and paid by Kinder Morgan....

In reviewing the issue of past due payments, [counsel] noted that ... staff has indicated to Kinder Morgan that it would like to renegotiate the [lease], especially in terms of length and royalty payments.  In response, Kinder Morgan has indicated its willingness to redraft the agreement to a five year term with the ability to renew it for two additional five year options....

[Counsel] observed that technically Kinder Morgan has not been released from the contract breach even though payment has been made.  Therefore the breach has remained open.

(Defs.' Ex. 33.)

(c)  In the months that followed, Kinder Morgan corresponded with the Port Authority, stating that it had cured the default under the lease agreement but that it would be willing to discuss negotiating new lease terms.  However, no new lease agreement was ever consummated and the Port Authority, after being approached by other entities interested in operating the port, voted on September 24, 2007, to declare a forfeiture of the lease agreement "based on the defaults and failure to cure within thirty (30) days of notice."[5]  (Defs.' Ex. 44.)

(d)  When Kinder Morgan made the delinquent payments, it specifically stated that it was in "full and final settlement" of the matter.  (Defs.' Exs. 20, 21, 26.)   The Port Authority

_____

[5]The Court notes that Kinder Morgan failed to make an annual reconciliation payment due in mid-March 2007, allegedly due to an oversight.  Counsel for the Port Authority brought this to Kinder Morgan's attention on April 25, 2007, and the payment, plus interest, was made within five days.  (Defs.' Exs. 34, 35.)  The Port Authority never issued Kinder Morgan a notice of default with regard to this late payment and it, therefore, could not and did not serve as the basis for the declared forfeiture of the lease agreement.

accepted the payments stating that it was "without prejudice to the positions of the Port Authority regarding delays in payments due under the operating agreement....."

(e)  A lessor's "receipt of payment with a unilateral declaration that its acceptance is without prejudice generally fails....  When [a lessor] receives payment he 'receive[s] it as it was tendered.'" <u>Friedman on Leases</u>, § 16:5.2 (5th ed. 2006) (internal citation omitted); <u>see also Girard v. Appleby</u>, 660 P.2d 245, 248-49 (Utah 1983) (where by reason of a breach a lease becomes forfeited, the lessor is entitled to recover possession; he waives that right by the acceptance of rent; he cannot accept rent, and at the same time claim a forfeiture of the lease; a unilateral reservation of rights "avails the lessor nothing"), <u>overruled on other grounds by Meadowbrook, LLC v. Flower</u>, 959 P.2d 115 (Utah 1998).

(f)  Based on the above authorities, the Court concludes that Kinder Morgan has established a likelihood of success on the merits of its argument that the Port Authority waived any default by accepting the delinquent royalty payments.

8.  <u>Remaining Dataphase Factors</u> - Kinder Morgan argues that it will suffer irreparable harm (for example, loss of customers and employees and injury to its business reputation) if injunctive relief is not granted and it is evicted before the merits of this dispute are decided.  At the hearing on this matter, the proof

presented by Kinder Morgan on this issue was somewhat lacking. Regardless, the Court finds that the balance of the harms and the public interest weigh in favor of granting injunctive relief.

Specifically, if Kinder Morgan were evicted from the leased premises at this juncture and it is ultimately determined that the Port Authority had no right to declare the eviction, the City of Fort Smith, and hence, the taxpayers, would be liable for damages for the wrongful eviction.  On the other hand, the Port Authority has not demonstrated any harm that it would suffer if the eviction is delayed pending final resolution of this matter.  Further, no evidence was presented indicating that another operator would be willing to take over the port while this action is pending but then vacate it should the action be resolved in Kinder Morgan's favor.  Thus, the balance of harms and the public interest in not only avoiding liability for damages for a possible wrongful eviction, but in continuing the uninterrupted operation of the port pending the outcome of this action weigh in favor of preserving the status quo.

**CONCLUSION**

9.   Based on the foregoing, the Court concludes that Kinder Morgan has demonstrated a likelihood of success on the merits and that the balance of harms and public interest warrant granting injunctive relief.

Accordingly, Kinder Morgan's **Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2)** is hereby **GRANTED**.

**IT IS THEREFORE ORDERED** that, pending entry of a final judgment of the merits of this case:

* Kinder Morgan shall have the right to occupy the leased premises and act as the port operator in accordance with the terms of the parties' lease; and

* the Port Authority shall not interfere with Kinder Morgan's occupation and operation of the leased premises or bring any competitor on the leased premises.

IT IS SO ORDERED.

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE